Steven T. CURRY, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–96–00164–CR.

Court of Appeals of Texas,
El Paso.

July 29, 1999.

Rehearing Overruled Sept. 1, 1999.

Charles Freeman, Houston, for Appellant.

Calvin Hartman, Assistant District Attorney, Houston, for the State.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION ON REMAND

SUSAN LARSEN, Justice.

Steven Curry appeals his conviction for aggravated kidnaping, following jury trial. We initially reversed and remanded for new trial on Curry's first point of error. We overruled his second point of error, which challenged the legal sufficiency of the evidence to support his conviction. The Court of Criminal Appeals, however, reversed our ruling on Curry's second point and remanded the case for analysis of his second point in light of *Malik v. State,* 953 S.W.2d 234 (Tex.Crim.App. 1997).

### IMPROPER AMENDMENT OF THE INDICTMENT

■ In his first point of error, Curry contends that the trial court committed reversible error by allowing the State to amend the indictment after the start of trial in violation of Texas Code of Criminal Procedure, Article 28.10. The State originally indicted Curry for aggravated kidnaping as follows:

STEVEN T. CURRY ... heretofore on or about November 19, 1993 did then and there unlawfully intentionally and knowingly abduct Jetterson Williams ... without his consent, with intent to prevent his liberation by using and threatening to use deadly force namely, a firearm, on the Complainant and with intent to inflict bodily injury on the Complainant and to terrorize the Complainant and to violate and abuse the Complainant sexually.

Over Curry's objection, the trial court allowed the State to strike the phrase "by

using and threatening to use deadly force namely, a firearm, on the complainant" from the indictment. A matter of form or substance in an indictment or information may be amended after the trial on the merits commences if the defendant does not object.[1] Amendment of the indictment over objection after start of trial is error because Article 28.10(b) inferentially prohibits trial amendments over objection.[2] Accordingly, it was error for the trial court to permit the amendment over Curry's objection.

The State contends, however, that two exceptions to Article 28.10(b) apply in this case. First, the State may abandon alternative allegations where two or more ways of committing the charged offense are alleged conjunctively in the same count. Second, the State may abandon surplusage. "Surplusage" means allegations that are neither essential to the validity of the indictment nor descriptive of that which is essential.[3] We find that neither exception applies in this case.

■ First, we find that the abandoned language was not an alternatively pleaded method of committing the offense of aggravated kidnaping. The State contends that it pleaded use of a firearm as an alternative to two other aggravating factors it pleaded: abducting another person with the intent to inflict bodily injury on him or violate or abuse him sexually; and abducting another person with the intent to terrorize him or a third person.[4] When this incident occurred in 1993, however, aggravated kidnaping did not include "use of a deadly weapon during the offense"[5] as an alternative aggravating element.

1. TEX.CODE CRIM. PROC. ANN. art. 28.10(b) (Vernon 1989).

2. *Sodipo v. State,* 815 S.W.2d 551, 556 (Tex.Crim.App.1991) (opin. on rehearing); *Brown v. State,* 828 S.W.2d 762, 763 (Tex.Crim.App. 1991).

3. *Wray v. State,* 711 S.W.2d 631, 633 (Tex.Crim.App.1986).

4. TEX. PENAL CODE ANN. § 20.03 (Vernon 1994); TEX. PENAL CODE ANN. § 20.04(a)(4)(5), (b) (Vernon Supp.1999) (use of a deadly weapon is an aggravating factor to the offense of kidnaping).

5. *See* TEX. PENAL CODE ANN. § 20.04, Acts 1973, 63rd Leg. p. 883, ch. 399, § 1 eff. Jan. 1, 1974. Amended by Acts 1993, 73rd Leg., ch. 900, § 1.01, eff. Sept. 1, 1994.

■ Moreover, the indictment here did not allege the use of a deadly weapon as a factor elevating kidnaping to aggravated kidnaping in any event. Rather, the State alleged that Curry intended to prevent Williams' liberation by using and threatening to use deadly force, namely, a firearm. Intention to prevent liberation is part of the definition of the term "abduct." A person commits aggravated kidnaping if he or she intentionally or knowingly *abducts* another person with the intent to engage in any one or more of the alternative aggravating factors.[6] "Abduct" is an element of the offense of aggravated kidnaping. The Penal Code defines the term "abduct" as

> [T]o restrain a person with intent to prevent his liberation by:
>
> (A) secreting or holding him in a place where he is not likely to be found; or
>
> (B) using or threatening to use deadly force.[7]

Thus, we find that the State was alleging not an alternative aggravating factor, but a specific means of abduction, by pleading that Curry intended to prevent the complainant's liberation by the use and threatened use of deadly force, namely a firearm. We therefore reject the State's argument that the abandoned language was pleaded as an alternative means of committing the offense of aggravated kidnaping.

■ The State also contends that the abandoned language was mere surplusage. Because the abandoned language was pleaded as a specific means of abduction, it cannot be surplusage. Unnecessary words or allegations in an indictment may be rejected as surplusage if they are not descriptive of that which is legally essential to the validity of the indictment.[8] But where the unnecessary matter describes that which is legally essential to charge a crime, it must be proven as alleged even though needlessly stated.[9] In this case, abduction is an element of the offense and therefore legally essential to charge a crime. Thus, the phrase "by using and threatening to use deadly force namely, a firearm" was descriptive to that which is legally essential to charge a crime. We therefore reject the State's argument that the phrase was merely surplusage.

### HARM

■ Having rejected the State's contentions that its amendment after the start of trial falls under an exception to Article 28.10(b), we conclude that allowing the amendment was error. We therefore turn to an analysis of the harm, if any, the error caused. In the past, a violation of Article 28.10(b) was reversible error without regard to harm analysis.[10] Effective September 1, 1997, however, the rules of appellate procedure in general, and the rule pertaining to harm analysis in particular, changed. The rules now provide for reversible error in criminal cases as follows:

> *(a) Constitutional Error.* If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.
>
> *(b) Other errors.* Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.[11]

We find that the phrase "any other error," as it contains no exception, must include a

---

6. *See* Tex. Penal Code Ann. § 20.04(a) (Vernon Supp.1999) (emphasis added).

7. Tex. Penal Code Ann. § 20.01(2)(A)(B) (Vernon 1994).

8. *Wray,* 711 S.W.2d at 633.

9. *Id.*

10. *See Brown,* 828 S.W.2d at 764.

11. Tex.R.App. P. 44.2(a)(b) (emphasis added).

violation of Article 28.10.[12] Accordingly, we must determine whether the error in this case affected Curry's substantial rights.

A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.[13] In this case, the State should have been required to prove that Curry abducted the victim with intent to prevent his liberation by using and threatening to use deadly force namely, a firearm. This is because the language was descriptive of an element essential to charge the crime and therefore had to be proven as alleged once stated.[14] The impermissible amendment, however, allowed the State to submit the case to the jury without requiring them to find use of a firearm. After reviewing the record, we find no evidence that Curry used a firearm.[15] Accordingly, the improper amendment had a substantial, injurious effect on the jury's verdict and thereby harmed Curry.

 The State argues that Curry waived error by failing to make a proper objection at trial, and failing to raise a point of error that comports with his trial objection. We disagree. To preserve error, the complaint must be made to the trial court by a timely request, objection, or motion that states the grounds for the ruling that the complaining party seeks from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context.[16] Moreover, the complaint on appeal must match the complaint raised in the trial court.[17] At trial, Curry objected to the State's amendment as follows:

> I object because the jeopardy has already attached. The jury has already had the indictment read to them and my client has pled to it and to now attempt to abandon the indictment for some reason—objection, it's a violation of Article 1, Section 3 of the Texas Constitution, Article 1, Section 10 of the Texas Constitution, Article 1, Sections 13 and 19 of the Texas Constitution, in that the State is married to that language. Since jeopardy has attached, they can't just modify and abandon paragraphs after the trial begins. They can do it before trial, but not after the trial begins. They have got to prove it.

Curry's complaint on appeal is that the trial court impermissibly allowed the State to amend the indictment after trial began. Although Curry never cited Article 28.10(b) by name, the basis of the objection was clear when he stated: "... they can't just modify and abandon paragraphs after the trial begins.... They have got to prove it." He makes the same complaint on appeal. We therefore find that Curry's trial objection was specific enough to preserve the error of which he now complains.

---

12. We believe a viable argument can be made that this error implicates constitutional guaranties insuring due process and prohibiting double jeopardy. As we find that there was harm using the more stringent harm review contained in 44.2(b), we do not reach the issue of whether this is constitutional error. Defendant has not categorized it as such in his brief, and we find it unnecessary to determine that question here.

13. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997) (citing *Kotteakos v. U.S.*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

14. *Wray*, 711 S.W.2d at 633.

15. The victim's prior statement in which he claimed that Curry used a gun to restrain him at some time during the offense was introduced into evidence. The statement was introduced for impeachment purposes only, however, and the jury was instructed that it could be considered only for the limited purpose of assisting in determining the credibility of the victim. In his trial testimony, the victim repeatedly denied that Curry used a gun to restrain him.

16. TEX.R.APP. P. 33.1(a)(1)(A).

17. *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim.App.), *cert. denied*, 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991).

Accordingly, we find that it was reversible error for the trial court to allow the State to amend the indictment after the start of trial and over Curry's objection. We therefore sustain his first point of error, which would require remand for a new trial, but we must review Curry's second point, which challenges the sufficiency of the evidence to support his conviction and would result in acquittal if successful.

## SUFFICIENCY OF THE EVIDENCE

■ In his second point, Curry contends that the evidence is insufficient to support his conviction because there is no evidence that he abducted the victim "by using and threatening to use deadly force, namely, a firearm...." Curry does not specify whether he intends to challenge the legal sufficiency of the evidence, factual sufficiency of the evidence, or both. Although he cites none of the familiar *Jackson* or *Geesa* language, he does cite one case referring to acquittal and states that "there was *no* evidence of Appellant's specific intent to prevent the complainant's liberation ...." (emphasis added). Accordingly, we interpret Curry's brief to request a legal sufficiency review.[18] In passing on legal sufficiency of the evidence, we determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.[19] We do not resolve conflicts of fact or assign credibility to witnesses, as it was the function of the trier of fact to accept or reject any, part, or all of any witness's testimony.[20] Our duty, rather, is to determine only if the explicit and implicit findings of the

trier of fact are rational by viewing all the evidence in a light most favorable to the verdict.[21] In so doing, we resolve any inconsistencies in the evidence in favor of the verdict.[22]

■ Pursuant to the Court of Criminal Appeals' decision in *Malik*, we measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case.[23] A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the States theories of liability, and adequately describes the particular offense for which the defendant was tried.[24] Curry argues that the only hypothetically correct charge as authorized by the indictment in this case is a charge authorized by the original indictment, which included the phrase "by using and threatening to use deadly force, namely, a firearm." Curry contends that the amendment deleting that language from the indictment was improper and the resulting altered indictment was ineffective to authorize any language in the jury charge. We disagree. As we have found in our discussion of Curry's first point, Curry's remedy for error in amending the indictment after trial began is a new trial. The error is adequately addressed with this remedy and we need not fashion an additional remedy of acquittal based on failure of the evidence as measured under the original indictment.

18. *See Davila v. State*, 930 S.W.2d 641, 648 (Tex.App.—El Paso 1996, pet. ref'd) (If brief challenges sufficiency of the evidence and references court to the *Jackson v. Virginia* standard while seeking a judgment of acquittal, only legal sufficiency complaint has been preserved).

19. *Jackson v. Virginia*, 443 U.S. 307, 318, 319, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State*, 820 S.W.2d 154, 156, 159 (Tex.Crim.App.1991).

20. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991).

21. *Adelman*, 828 S.W.2d at 421–22.

22. *Matson*, 819 S.W.2d at 843 (quoting *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988)).

23. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997).

24. *Id.*

Since the amended indictment in this case facially alleged a complete offense, the State was bound by the theory alleged in the indictment as amended, as is this court in our sufficiency analysis.[25] The court's charge as measured against the indictment in this case did not require the jury to find that Curry abducted the victim by using a firearm. Thus, it is irrelevant whether the evidence supported such a finding. Accordingly, we overrule Curry's second point.

## CONCLUSION

Having considered and overruled Curry's second point of error, which would have resulted in judgment rendered for Curry, and having sustained Curry's first point, we reverse the judgment of the trial court and remand for new trial in accordance with this opinion. Our disposition of Curry's first and second points makes it unnecessary for us to address his remaining points.

**25.** *See Fisher v. State,* 887 S.W.2d 49, 57 (Tex.Crim.App.1994).